SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
JULIA VAN ROO, Sr. Deputy City Attorney (274169)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone: (408) 535-1900
cao.main@sanjoseca.gov

JONATHAN I. KRAVIS (pro hac vice)
JESSIE K. LIU (pro hac vice)
CHARLOTTE U. KEELEY (pro hac vice)
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
jonathan.kravis@lskllp.com
jessie.liu@lskllp.com
charlotte.keeley@lskllp.com

*Attorneys for Defendants*
CITY OF SAN JOSÉ;
SAN JOSÉ POLICE DEPARTMENT;
and PAUL JOSEPH

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSÉ DIVISION

| | |
|---|---|
| ZHAOCHENG ANTHONY TAN; SCOTT WEST; and COLIN WOLFSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF SAN JOSE; SAN JOSE POLICE DEPARTMENT; and PAUL JOSEPH, in his official capacity as San Jose Chief of Police,<br><br>*Defendants*. | Case No. 5:26-cv-03181-BLF<br><br>**DEFENDANTS CITY OF SAN JOSÉ; SAN JOSÉ POLICE DEPARTMENT; and PAUL JOSEPH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:          Hon. Beth Labson Freeman<br>Courtroom:    1 – 5th Floor<br>Hearing Date: December 3, 2026<br>Hearing Time: 9:00 a.m. |

**Table of Contents**

**Page**

I.   INTRODUCTION ................................................................................................. 3

II.  SUMMARY OF FACTUAL ALLEGATIONS ................................................... 4

III. LEGAL STANDARD ........................................................................................ 6

    A.   Federal Rule of Civil Procedure 12(b)(6) .............................................. 6

    B.   Federal Rule of Civil Procedure 12(f) .................................................... 7

IV.  ARGUMENT ..................................................................................................... 7

    A.   Plaintiffs' claims must be dismissed because they have not plausibly alleged that a search occurred under the Fourth Amendment. ............................................................................. 7

        1.   There is no reasonable expectation of privacy in the exterior or location of a vehicle on public roads. ....................................................................................................... 8

        2.   The exception recognized in *Carpenter v. United States* does not apply to ALPR cameras. ...................................................................................................................... 10

            a.   ALPR data is not remotely comparable to CSLI. ............................................ 11

            b.   Aggregation of ALPR is not at issue here and in any event does not violate the Fourth Amendment. .......................................................................................... 13

            c.   Recent cases in the Ninth Circuit and other jurisdictions confirm that the City's use of ALPRs does not violate the Fourth Amendment. ............................................ 14

            d.   Discovery is not necessary to resolve the Fourth Amendment issue. ............... 16

            e.   Retention of lawfully collected images does not implicate the Fourth Amendment. ...................................................................................................... 19

    B.   The claims against SJPD and Paul Joseph are duplicative and should be stricken. ...... 21

    C.   Plaintiffs' class definitions are overly broad and should be stricken. .......................... 22

V.   CONCLUSION .................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007)................................................................................................ 6

*California v. Carney*,

471 U.S. 386 (1985)................................................................................................ 10

*California v. Ciraolo*,

476 U.S. 207 (1986)................................................................................................ 20

*Cardwell v. Lewis*,

417 U.S. 583 (1974)................................................................................................ 9

*Carpenter v. United States*,

585 U.S. 296 (2018)........................................................................................ passim

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*,

533 F.3d 780 (9th Cir. 2008) ................................................................................ 22

*Dow Chem. Co. v. United States*,

476 U.S. 227 (1986)................................................................................................ 20

*Est. of Beitz v. Riverside Police Dep't*,

No. 5:24-CV-02084-SSS-JPRX, 2025 WL 2994574 (C.D. Cal. Sept. 30, 2025) ................... 21

*Falcone v. Nestle USA, Inc.*,

No. 24-7707, 2026 WL 74510 (9th Cir. Jan. 9, 2026)........................................................ 23

iii.

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Goodfellow v. Ahren*,

    No. 13-04726 RS, 2014 WL 1248238 (N.D. Cal. Mar. 26, 2014)............................................ 21

*Hervey v. Estes*,

    65 F.3d 784 (9th Cir. 1995) ....................................................................................................... 21

*Hofmann v. City & Cnty. of San Francisco*,

    870 F. Supp. 2d 799 (N.D. Cal. 2012) ...................................................................................... 21

*Johnson v. Quander*,

    440 F.3d 489 (D.C. Cir. 2006) .................................................................................................. 20

*Kajberouni v. Bear Valley Cmty. Servs. Dist.*,

    641 F. Supp. 3d 888 (E.D. Cal. 2022)....................................................................................... 21

*Katz v. United States*,

    389 U.S. 347 (1967)........................................................................................................... 7, 8, 20

*Kentucky v. Graham*,

    473 U.S. 159 (1985) ................................................................................................................... 22

*Lyons v. Bank of Am., NA*,

    No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011)......................................... 23

*New York v. Class*,

    475 U.S. 106 (1986)......................................................................................................... 8, 9, 10

*Perkins v. LinkedIn Corp.*,

    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................................... 22

            DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Riley v. California*,

    573 U.S. 373 (2014).................................................................................................. 11

*Sanchez v. Los Angeles Department of Transportation*,

    39 F.4th 548 (9th Cir. 2022) .................................................................................... 15

*Sanders v. Apple Inc.*,

    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................... 22

*Sandoval v. Ali*,

    34 F. Supp. 3d 1031(N.D. Cal. 2014) ................................................................. 7, 23

*Schemel v. City of Marco Island*,

    No. 2:22-CV-79-KCD-DNF, 2025 WL 2958798 (M.D. Fla. Oct. 17, 2025) ..................... 13, 16

*Schmidt v. City of Norfolk*,

    819 F. Supp. 3d 492 (E.D. Va. 2026) ....................................................... 7, 13, 16, 17

*Scholl v. Illinois State Police*,

    776 F. Supp. 3d 701 (N.D. Ill. 2025) ........................................................... 7, 13, 16

*Smith v. Maryland*,

    442 U.S. 735 (1979)................................................................................................. 11

*South Dakota v. Opperman*,

    428 U.S. 364 (1976)................................................................................................. 10

*United States v. Bowers*,

    No. 2:18-CR-00292-DWA, 2021 WL 4775977 (W.D. Pa Oct. 11, 2025) ................... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Butler*,

    No. 23-CR-00449-SI-1, 2024 WL 3447505 (N.D. Cal. July 16, 2024)................................ 7, 15

*United States v. Cooper*,

    No. CR 23-131, 2025 WL 35035 (E.D. La. Jan. 6, 2025) ................................................ 9, 14, 18

*United States v. Diaz-Castaneda*,

    494 F.3d 1146 (9th Cir. 2007) ......................................................................................... 8, 9

*United States v. Dubrofsky*,

    581 F.2d 208 (9th Cir. 1978) ................................................................................................ 8

*United States v. Ellison*,

    462 F.3d 557 (6th Cir. 2006) .............................................................................................. 20

*United States v. Floyd*,

    811 F. Supp. 3d 1345 (M.D. Fla. 2025)...................................................................... 13, 17, 18

*United States v. Jackson*,

    No. 24-CR-10010-JWB, 2025 WL 1530574 (D. Kan. May 29, 2025).................... 9, 12, 13, 17

*United States v. Jones*,

    565 U.S. 400 (2012).................................................................................................... 11, 15

*United States v. Knotts*,

    460 U.S. 276 (1983)................................................................................................... passim

*United States v. Martin*,

    753 F. Supp. 3d 454 (E.D. Va. 2024) .................................................................. 12, 14, 18, 19

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. McIver*,

    186 F.3d 1119 (9th Cir. 1999) ............................................................................................... 8

*United States v. Pineda-Moreno*,

    688 F.3d 1087 (9th Cir. 2012) ............................................................................................... 8

*United States v. Porter*,

    170 F.4th 381 (5th Cir. 2026) ......................................................................................... 7, 17

*United States v. Rubin*,

    556 F. Supp. 3d 1123 (N.D. Cal. 2021) ................................................................ 7, 11, 13, 14

*United States v. Slaybaugh*,

    No. 3:25-CR-00104-ECM-SMD, 2025 WL 2373953 (M.D. Ala. July 10, 2025).................... 14

*United States v. Sturdivant*,

    786 F. Supp. 3d 1098 (N.D. Ohio 2025).............................................................................. 14

*United States v. Toombs*,

    671 F. Supp. 3d 1329 (N.D. Ala. 2023).......................................................................... 9, 14, 18

*United States v. Tuggle*,

    4 F.4th 505 (7th Cir. 2021) ................................................................................................ 16

*United States v. Yang*,

    958 F.3d 851 (9th Cir. 2020) .............................................................................................. 14

*Whitaker v. Tesla Motors, Inc.*,

    985 F.3d 1173 (9th Cir. 2021) .............................................................................................. 6

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ 21

Cal. Civ. Code § 1798.90.50 ............................................................................................ 5

Cal. Civ. Code § 1798.90.55 ............................................................................................ 5

Cal. Veh. Code § 5201(a) ................................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 4, 6

Federal Rule of Civil Procedure 12(f) .............................................................. 4, 7, 21, 22

**Constitutional Provisions**

U.S. Const. amend. IV ..................................................................................................... 7

## NOTICE OF MOTION AND MOTION TO DISMISS,

## OR, IN THE ALTERNATIVE, TO STRIKE

**PLEASE TAKE NOTICE** that on Thursday, December 3, 2026 at 9:00 a.m., or at such date and time as the Court may order, before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, 280 South 1st Street, San José, CA, 95113, Defendants City of San José, San José Police Department, and Paul Joseph will, and hereby do, move this Court for an order dismissing Plaintiffs' Complaint and striking the class allegations.

This Motion to Dismiss, or, in the alternative, to Strike, is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) and based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all other documents on file in this action, and any oral argument.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) where, even accepting every allegation as true, Plaintiffs cannot establish a reasonable expectation of privacy in the exterior appearance or location of their vehicles as they travel on public roads, and therefore cannot plausibly allege that San José's automated license plate readers conducted a "search" within the meaning of the Fourth Amendment?

2. Should the Court dismiss and strike the portions of the Complaint naming the San José Police Department and Paul Joseph pursuant to Federal Rule of Civil Procedure 12(f) because they are not separate legal entities from the City and the claims against them are duplicative and redundant?

3. Should the Court strike Plaintiffs' class allegations pursuant to Federal Rule of Civil Procedure 12(f) where the proposed class is overbroad, unascertainable, and rests on common questions to which neither the named Plaintiffs nor most putative class members have standing?

**RELIEF REQUESTED**

The Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, if the Court does not dismiss the Complaint in its entirety, the class allegations should be stricken from the Complaint.

Dated: June 26, 2026

By:*/s/ Jonathan I. Kravis*

SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
JULIA VAN ROO, Sr. Deputy City Attorney (274169)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone: (408) 535-1900
cao.main@sanjoseca.gov

JONATHAN I. KRAVIS (pro hac vice)
JESSIE K. LIU (pro hac vice)
CHARLOTTE U. KEELEY (pro hac vice)
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
jonathan.kravis@lskllp.com
jessie.liu@lskllp.com
charlotte.keeley@lskllp.com

*Counsel for Defendants*

2.    DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs ask this Court to push the Fourth Amendment where it has never gone. This is not a case about protecting private spaces and information—such as homes, offices, hotel rooms, and personal documents—from undue government incursion. Rather, Plaintiffs seek something far more extraordinary: a constitutional bar on the use of cameras to capture static pictures of the outside of vehicles driving on public roads. The expansionist prohibition that Plaintiffs seek does not accord with societal expectations of privacy and has been roundly rejected by federal courts.

Like many cities across the country, the City of San José ("City" or "San José") deploys automated license plate readers ("ALPRs") on public roads. These devices photograph passing vehicles and store a record of each vehicle's exterior description and discrete location in a database for thirty days. San José Police Department ("SJPD") policy limits access to ALPR data to authorized personnel acting for specified purposes and expressly prohibits the data from being used to collect non-public information, monitor First Amendment-protected activity, or assist in immigration enforcement, among other restrictions.

Plaintiffs contend that a Fourth Amendment search occurs when San José's ALPR system photographs vehicles traveling on public roads and stores those images temporarily—what Plaintiffs characterize as "tracking a person's movements and then storing them in a government database." But federal courts around the country, including in the Ninth Circuit, have repeatedly and consistently rejected this argument. There is no general expectation of privacy in a vehicle's location or appearance on a public street, and virtually every court to consider the issue—including at the motion to dismiss stage—has held that ALPRs do not infringe on any reasonable expectation of privacy. Relying on undisputed facts about the limited information ALPRs collect, those courts have refused to extend the Supreme Court's decision in *Carpenter v. United States* to ALPR data, finding that ALPRs do not record the whole of an individual's movements such that a warrant would be required. This Court should reach the same conclusion.

Even accepting every allegation in the Complaint as true, Plaintiffs cannot establish a reasonable expectation of privacy in the exterior appearance of their vehicles as they travel on public roads. Their claims fail as a matter of law to set forth a basis on which relief can be granted, and this Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The dispositive characteristics of the ALPR system are not in factual dispute, and no amount of discovery concerning the frequency, scale, or extent of Defendants' use of the system in San José would alter the legal analysis. Because additional fact discovery would not affect the outcome, dismissal, not further proceedings, is the appropriate resolution.

The Court should dismiss the SJPD and Paul Joseph and strike the portions of the complaint naming them as defendants pursuant to Federal Rule of Civil Procedure 12(f) because they are not separate legal entities from the City.

Plaintiffs' class action allegations are also improper as a matter of law and should be stricken pursuant to Rule 12(f). Plaintiff's proposed class—defined as "all San Jose residents who were drivers of vehicles that, after April 15, 2025, were photographed or, at any future date, will be photographed by the Flock Cameras"—is overbroad and unascertainable.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

This case arises from the City of San José's limited use of ALPR cameras provided through a contract with Flock Safety ("Flock"), a private technology vendor. *See generally* Compl., ECF No. 1. Plaintiffs allege that the City utilizes 474 ALPR cameras supplied by Flock. Compl. ¶¶ 2, 46. According to Plaintiffs, in many locations, these cameras are positioned on both sides of a road or at all four corners of an intersection. *Id*. ¶ 50. Necessarily, then, the City's ALPR cameras cover fewer than 474 discrete locations across San José's approximately 180 square miles. *See also id*. Figure 3 (showing that ALPR cameras are far from ubiquitous in San José).

Flock cameras are fixed ALPRs, *id*. ¶¶ 22, 30, meaning they are permanently mounted, roadside cameras. They photograph passing vehicles on public roads and employ Flock's software to analyze observable vehicle characteristics, including license plate data and other external features. *Id*. ¶¶ 2, 32. The software then generates what it terms a "Vehicle Fingerprint," cataloging

visible attributes such as the vehicle's color, make, and external characteristics, including features like bumper stickers or roof racks. *Id*. ¶ 32. In San José, the resulting information is stored in Flock's database for a limited period of 30 days. *Id*. ¶ 55.

Access to and use of this data is limited by California's ALPR statute. Cal. Civ. Code §§ 1798.90.51–3. ALPR end-users and operators are subject to two primary obligations. *Id*. First, they must maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure. *Id*. Second, they must implement a publicly available usage and privacy policy that ensures the collection, use, maintenance, sharing, and dissemination of ALPR information is "consistent with respect for individuals' privacy and civil liberties." *Id*. Further, ALPR data cannot be shared with out-of-state or federal agencies. Cal. Civ. Code § 1798.90.55. Cal. Civ. Code § 1798.90.55 limits the sharing of ALPR information to public agencies and the definition of "public agency" is limited to state or local agencies and does not include out-of-state of federal agencies. Cal. Civ. Code § 1798.90.50.

Pursuant to Cal. Civ. Code § 1798.90.51–3, SJPD's enacted policy permits accessing ALPR data only to advance legitimate law enforcement purposes. Compl. ¶ 61. The policy further imposes express limitations on the system's use, including prohibitions on collecting non-public information, monitoring lawful or First Amendment-protected activity, or assisting in immigration enforcement. *Id*. ¶ 62.

Plaintiffs Tony Tan, Scott West, and Colin Wolfson are San José residents. *Id*. ¶¶ 71, 86, 94. The Complaint alleges that Tan routinely drives past ALPR cameras, and that images of his vehicle are stored in a database accessible to law enforcement such that the images could be used to "follow Tony's movements throughout San Jose" and derive "insights into Tony's habits and associations." *Id*. ¶ 81. The Complaint alleges that West will "almost immediately encounter a Flock Camera once he leaves his residential neighborhood, no matter which way he turns." *Id*. ¶ 89. The Complaint alleges that Wolfson "drives past the Flock Cameras nearly every day" and

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

that "Flock cameras outside of San Jose have repeatedly photographed Colin as he drove and created records that are accessible to the SJPD." *Id.* ¶¶ 97, 99.

Plaintiffs contend that the City's use of ALPR technology violates the Fourth Amendment. Specifically, they allege that "tracking a person's movements and then storing them in a government database" is a search. *Id.* ¶ 8. They further argue that this purported search is unreasonable because it was conducted without a warrant. *Id.* ¶ 120. Plaintiffs do not allege that the City has actually accessed ALPR data associated with their vehicles.

Plaintiffs seek nominal damages and equitable relief, including an injunction requiring Defendants to delete any ALPR images and the associated data within 24 hours of collection, unless (i) the SJPD has a specific warrant based on probable cause to collect and/or retain the images and data or (ii) an exception to the warrant requirement applies. In the alternative, if the data is not deleted, Defendants would be prohibited from accessing, or permitting third party access to any images or associated data older than 24 hours, unless the SJPD, or the third party, obtains a warrant or an exception to the warrant requirement applies). *Id.* at 33–34.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

**B.    Federal Rule of Civil Procedure 12(f)**

Under Federal Rule of Civil Procedure 12(f), a court may order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts may strike class allegations that cannot possibly move forward or are inconsistent with a plaintiff's theory of the case. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014).

## IV.    ARGUMENT

**A.    Plaintiffs' claims must be dismissed because they have not plausibly alleged that a search occurred under the Fourth Amendment.**

Federal courts—including courts in this jurisdiction—have routinely held that ALPR photographs of vehicles on public roads do not constitute Fourth Amendment searches. *See, e.g.*, *United States v. Rubin*, 556 F. Supp. 3d 1123 (N.D. Cal. 2021); *United States v. Butler*, No. 23-CR-00449-SI-1, 2024 WL 3447505 (N.D. Cal. July 16, 2024). *See also United States v. Porter*, 170 F.4th 381 (5th Cir. 2026); *Schmidt v. City of Norfolk*, 819 F. Supp. 3d 492 (E.D. Va. 2026), appeal docketed, No. 26-01227 (4th Cir. Feb 26, 2026)*; Scholl v. Illinois State Police*, 776 F. Supp. 3d 701 (N.D. Ill. 2025), appeal docketed, No. 25-01847 (7th Cir. May 16, 2025).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The threshold question is whether the challenged government conduct constitutes a "search." The Supreme Court has explained that a government action qualifies as a search when it infringes upon an expectation of privacy that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The two-part test in *Katz* requires courts to analyze, first, whether the person "exhibit[s] an actual (subjective) expectation of privacy" and second, whether the expectation is "one that society is prepared to recognize as 'reasonable.'" *Id*.

Plaintiffs attempt to satisfy the *Katz* test by alleging a "subjective expectation of privacy in their long-term movements in their cars" and that "[s]ociety's expectation has been that the government would not and could not create a retrospective catalogue of every person's movements

across hundreds of strategically chosen locations in a city." Compl. ¶ 119. But even accepting Plaintiffs' characterization of the ALPR cameras at face value, decades of precedent foreclose their arguments on each of the *Katz* prongs.

### 1. There is no reasonable expectation of privacy in the exterior or location of a vehicle on public roads.

The governing principle is straightforward: the Fourth Amendment does not prohibit law enforcement from observing or recording what is already exposed to public view. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. No person has a reasonable expectation of privacy in the exterior of an automobile exposed to public view, *see New York v. Class*, 475 U.S. 106, 114 (1986), or in movements along public roads, as "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281 (1983). The Ninth Circuit has been equally emphatic: "No one can reasonably think that his expectation of privacy has been violated when a police officer sees what is readily visible." *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151 (9th Cir. 2007).

Critically, the use of technology to facilitate that observation does not alter the constitutional calculus. "Permissible techniques of surveillance include more than the five senses of officers and their unaided physical abilities" and "contribute to surveillance without violation of the Fourth Amendment in the usual case." *United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir. 1978). Applying that principle to camera-based surveillance, the Ninth Circuit "reject[ed] the notion that the visual observation of the site became unconstitutional merely because law enforcement chose to use a more cost-effective" unmanned camera for surveillance. *United States v. McIver*, 186 F.3d 1119, 1125 (9th Cir. 1999), *overruled on other grounds as recognized by United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir. 2012). Simply put, "[v]isual surveillance of vehicles in plain view does not constitute an unreasonable search for Fourth Amendment purposes…even if the surveillance is aided by technology which augments an

8.                    DEFS.' MOT. TO DISMISS COMPL. & STRIKE
                     NO. 5:26-cv-03181-BLF

officer's sensory faculties." *United States v. Jackson*, No. 24-CR-10010-JWB, 2025 WL 1530574, at *6 (D. Kan. May 29, 2025). *See also United States v. Cooper*, No. CR 23-131, 2025 WL 35035, at *6 (E.D. La. Jan. 6, 2025) (the "Fourth Amendment did not prohibit the police from using technology to augment their visual surveillance").

Applying these principles to the specific information captured here leaves no room for doubt. Plaintiffs allege that the ALPR cameras capture a car's license plate, "make, type, and color" and "other features like bumper stickers and roof racks." Compl. ¶ 32. Every one of these attributes is visible to the naked eye and "could have been obtained from simple visual surveillance." *United States v. Toombs*, 671 F. Supp. 3d 1329, 1341 (N.D. Ala. 2023). The Supreme Court has held that because the "exterior of a car . . . is thrust into the public eye" while driving on public thoroughfares, "to examine it does not constitute a 'search'" under the Fourth Amendment. *Class*, 475 U.S. at 114 (citing *Cardwell v. Lewis*, 417 U.S. 583, 588–89 (1974) (plurality opinion)).

License plates deserve particular emphasis. By driving on public streets, Plaintiffs voluntarily display their plates to the world. Indeed, California law commands that license plates be "mounted in a position so as to be clearly visible." Cal. Veh. Code § 5201(a). There is nothing constitutionally significant about ALPR cameras photographing what the law already requires every motorist to broadcast. The Supreme Court found it "unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." *Class*, 475 U.S. at 114. The Ninth Circuit has reached the identical conclusion, holding that "people do not have a subjective expectation of privacy in their license plates, and that even if they did, this expectation would not be one that society is prepared to recognize as reasonable." *Diaz-Castaneda*, 494 F.3d at 1151.

Plaintiffs fare no better with respect to their movements on public roads. In *Knotts*, the Supreme Court held that the government's use of a beeper to track a vehicle through traffic was not a search because a "person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." 460 U.S. at 281.

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

The Court's reasoning was categorical: when the defendant "travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *Id*. at 281–82. Plaintiffs' movements on public thoroughfares in San José are no different. By choosing to drive on city streets, they voluntarily expose their comings and goings to observation—whether by a neighbor, a traffic officer, or a camera mounted in plain view.

The heavily regulated nature of automobiles further reinforces this conclusion. Vehicles operate under "'pervasive and continuing governmental regulation and controls,'" *Class*, 475 U.S. at 113 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)), and motorists are routinely subject to government observation and intrusion. "As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations . . . are noted, or if headlights or other safety equipment are not in proper working order." *Class*, 475 U.S. at 113 (quoting *Opperman*, 428 U.S. at 368). All operators of vehicles on public roads do so with full knowledge that they are "accorded less privacy in [their] automobiles." *California v. Carney*, 471 U.S. 386, 392 (1985). Plaintiffs, who chose to drive on public streets subject to this regulatory regime, cannot now claim surprise that their publicly displayed vehicles were observed.

In sum, every category of information the ALPR cameras capture—license plates, vehicle exteriors, and movements on public roads—falls squarely outside the protections of the Fourth Amendment. Because Plaintiffs have no reasonable expectation of privacy in the exteriors of their vehicles as they traverse public roads, the City's photographing and storing images of those vehicles does not constitute a search within the meaning of the Fourth Amendment.

### 2. The exception recognized in Carpenter v. United States does not apply to ALPR cameras.

Under the third-party doctrine, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44,

10.                    DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

(1979). In *Carpenter v. United States*, the Supreme Court recognized an exception to the third-party doctrine for historical cell-site location information ("CSLI"), holding that the government's acquisition of such records constituted a search under the Fourth Amendment. 585 U.S. 296, 316 (2018). The Court compared CSLI to the Global Positioning System (GPS) tracking device the Court evaluated in *United States v. Jones*, 565 U.S. 400 (2012), and distinguished CSLI from the beeper in *Knotts*. *Carpenter*, 585 U.S. at 309–13. The Court emphasized that its decision was a "narrow one," and confined to the "unique nature of cell phone location information" and did not "call into question conventional surveillance techniques and tools, such as security cameras" *Id.* at 315–16. Any attempt to shoehorn ALPR cameras into *Carpenter's* framework would fail.

   a.   *ALPR data is not remotely comparable to CSLI.*

Federal courts, including in this District, have recognized that *Carpenter*'s exception does not apply to ALPR data because that data is "not remotely comparable" to the comprehensive location information provided by CSLI. *See, e.g.*, *Rubin*, 556 F. Supp. 3d at 1130. The CSLI at issue in *Carpenter* was collected by third-party cell phone companies, not the government. *Carpenter*, 585 U.S. at 302. And the CSLI was "detailed, encyclopedic, and effortlessly compiled." *Id.* at 309. "Mapping a cell phone's location" over many days "provides an all-encompassing record of the holder's whereabouts." *Id.* at 311. But comprehensiveness alone did not drive the Court's holding. Critical to its conclusion was the cell phone's nature as "almost a 'feature of human anatomy'" that "faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* at 311 (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)). Because CLSI tracks a person *into* these intimate, constitutionally protected spaces, the Court likened such surveillance to "attach[ing] an ankle monitor to the phone's user," achieving "near perfect surveillance." *Carpenter*, 585 U.S. at 312. In *Carpenter*, the CSLI recorded the individual's location "several times a minute" for an "average of 101 data points per day," and wireless carriers retained those

records "up to five years," enabling the government to "travel back in time to retrace a person's whereabouts." *Id.* at 300, 302, 312.

ALPR cameras share none of the unique characteristics of cell phone location information because they never collect information "beyond public thoroughfares." *Id*. at 311. Plaintiffs cannot plausibly allege that an ALPR camera functions as a "feature of human anatomy" or "faithfully follows" anyone, let alone follows them into private residences, medical offices, or other constitutionally sensitive locations. Unlike a cell phone—which accompanies its owner into the most intimate spaces and generates location data continuously—an ALPR camera is a stationary device in a fixed position on a public roadway. It does not peer into homes. It does not follow a person within a building. It does not show where a vehicle journey started, stopped, or ended. It captures data about a vehicle only during the brief moment that vehicle passes through the camera's field of view on a public road. It photographs only the car's exterior. Compl. ¶ 2. And the data is stored for just 30 days. *Id*. ¶ 55.

The Complaint does not—and cannot—allege that ALPR cameras record Plaintiffs' location "several times a minute." It alleges only that cameras have "repeatedly photographed" Plaintiffs' cars. *Id*. ¶¶ 102, 104, 106. Nor does the Complaint allege that ALPR cameras can "discern the speed of the vehicle, the identity of any vehicle occupant (apart from some camera angles showing that the vehicle may have multiple occupants), or the end destination to which any vehicle is travelling." *Jackson*, 2025 WL 1530574, at *2. Moreover, ALPR cameras "are not typically placed in a linear, ordered fashion that tracks movements of the cars" and are "not designed to capture pictures of humans." *United States v. Martin*, 753 F. Supp. 3d 454, 458 (E.D. Va. 2024). In short, nothing about the ALPR system "faithfully follows" a person from place to place—much less beyond public thoroughfares and into the private spaces that animated *Carpenter's* concerns. *See Jackson*, 2025 WL 1530574 at *2.

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

     *b. Aggregation of ALPR is not at issue here and in any event does not violate the Fourth Amendment.*

Nor can Plaintiffs claim that aggregating images from multiple ALPR cameras, or using ALPR cameras alongside other technology, transform discrete snapshots into constitutionally protected information. Plaintiffs do not allege that *they* have been subject to any such activity. That is, Plaintiffs do not allege that the City actually queried the ALPR database for their vehicles, retrieved any photograph, or reconstructed any aspect of their movements. And the mere passive existence of data that is never accessed, never compiled, and never analyzed does not constitute a search that triggers Fourth Amendment protection. Where, as here, Plaintiffs do not allege that any City official retrieved, viewed, or analyzed photographs of their cars, Plaintiffs cannot maintain that some hypothetical future aggregation of ALPR data for their vehicles violates the Fourth Amendment. *See, e.g.*, *Scholl*, 776 F. Supp. 3d at 710–11 (dismissing a challenge to a program of approximately 300 ALPR cameras where plaintiffs failed to allege any substantial risk that police would retrieve their license-plate information from the database); *Schmidt*, 819 F. Supp. 3d at 509 (holding that plaintiffs only had "standing to challenge the collection and storage of the images, and lack[ed] standing to challenge any query of the ALPR image database" because they conceded that their vehicles had never been the subject of a query).

Even if Plaintiffs had made such allegations, their Fourth Amendment claim would still fail because the City's cameras cannot reconstruct continuous movements or track activity within protected spaces—they reveal, at most, that a vehicle passed certain fixed points on public roadways at certain times, with no information about routes traveled between those points, stops made, or ultimate destinations. Not surprisingly, then, courts that have addressed ALPR data have held it falls short of the "detailed, encyclopedic, and effortlessly compiled" record in *Carpenter*. *Schmidt*, 819 F. Supp. 3d at 513; *Jackson*, 2025 WL 1530574, at *7; *Rubin*, 556 F. Supp. 3d at 1130; *Scholl*, 776 F. Supp. 3d at 719; *United States v. Floyd*, 811 F. Supp. 3d 1345, 1350 (M.D. Fla. 2025); *Schemel v. City of Marco Island*, No. 2:22-CV-79-KCD-DNF, 2025 WL 2958798, at *3 (M.D. Fla. Oct. 17, 2025), appeal docketed, No. 25-13913 (11th Cir. Nov 06, 2025); *Cooper*,

2025 WL 35035, at \*6; *Martin*, 753 F. Supp. 3d at 471; *Toombs*, 671 F. Supp. 3d at 1340; *United States v. Slaybaugh*, No. 3:25-CR-00104-ECM-SMD, 2025 WL 2373953, at \*2 (M.D. Ala. July 10, 2025), appeal docketed, No. 25-14394 (11th Cir. Dec 17, 2025); *United States v. Sturdivant*, 786 F. Supp. 3d 1098, 1111–13 (N.D. Ohio 2025), appeal docketed, No. 26-03426 (6th Cir. May 12, 2026); *United States v. Bowers*, No. 2:18-CR-00292-DWA, 2021 WL 4775977, at \*3 (W.D. Pa. Oct. 11, 2025).

> c.   *Recent cases in the Ninth Circuit and other jurisdictions confirm that the City's use of ALPRs does not violate the Fourth Amendment.*

This precise issue has been considered within the Ninth Circuit. In *United States v. Rubin*, the court assessed ALPR cameras deployed throughout San Francisco and found "no reason to believe that the [ALPR] database provided a detailed log of [defendant's] movements." 556 F. Supp. 3d at 1129. The court expressly distinguished *Carpenter*: "Unlike the cell-site location records there, the data here provided no more information than what could have been obtained through police surveillance." *Id.* at 1130. The court found it "clear" that the ALPR data "was not remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*." *Id.* at 1130 (citing *Carpenter*, 585 U.S. at 309). *Rubin* arises in the same district as this case and addresses materially identical technology.

*Rubin* relied heavily on Judge Bea's concurring opinion in *United States v. Yang*, 958 F.3d 851, 863 (9th Cir. 2020) (Bea, J., concurring). In *Yang*, the Ninth Circuit affirmed denial of a motion to suppress evidence gathered from a search warrant that relied on ALPR data. *Id*. at 853, 864. While the majority resolved the case on other grounds, Judge Bea's concurrence squarely analyzed whether querying an ALPR database constitutes a Fourth Amendment search. Judge Bea concluded it does not, explaining that there was no evidence the database "revealed the whole of [the defendant's] physical movements." *Id*. at 863. Judge Bea's concurrence cautioned: "It would be folly to hold that searches of ALPR databases require a warrant without identifying even one case where the 'whole of [one's] physical movements' was implicated in an ALPR database search." *Id*. at 864 (quoting *Carpenter*, 585 U.S. at 310).

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

Most recently, a court in this district reaffirmed *Rubin* in *Butler*, a case involving ALPR cameras specifically. 2024 WL 3447505, *1. The *Butler* court agreed with the analysis in *Rubin* and concluded that ALPR images "did not permit law enforcement to 'track every movement that [defendant] made in the vehicle.'" *Id.* at *2 n. 3 (quoting *Jones*, 565 U.S. at 430). *Butler* confirms that this District's law is settled: ALPR cameras do not implicate *Carpenter*.

Although it arose in a different technological context, the Ninth Circuit's decision in *Sanchez v. Los Angeles Department of Transportation*, 39 F.4th 548 (9th Cir. 2022), further confirms that discrete vehicular data is categorically unlike the CSLI at issue in *Carpenter*. In *Sanchez*, the court assessed whether GPS location data collected under the City of Los Angeles's Mobility Data Specification ("MDS") for electric scooters constituted a Fourth Amendment search. The court distinguished CSLI on the ground that cell phone data "identifies the location of a particular user virtually continuously." *Id.* at 560. By contrast, MDS location data "does not 'pervasive[ly] track' users over an extended period, . . . instead capturing only the locations of e-scooters during discrete trips." *Id.* (quoting *Carpenter*, 585 U.S. at 314). The court concluded that "[t]he location data is thus far afield from the dragnet, continuous monitoring of an identified individual's movements at issue in *Carpenter* and *Jones*," and that "the collection of MDS data is more like the remote monitoring of a discrete 'automotive journey' in *Knotts*." *Sanchez*, 39 F.4th at 560 (quoting *Knotts*, 460 U.S. at 285). While *Sanchez* involved e-scooter data rather than license-plate photographs, the distinction the Ninth Circuit drew between continuous monitoring of an individual's movements and the capture of discrete vehicular trip information applies with at least equal force here. ALPR cameras capture even less information than the MDS data in *Sanchez*: ALPR cameras record only a single snapshot of a vehicle's exterior at a fixed point, rather than real-time location for an entire trip.

The consensus in this District is part of an overwhelming nationwide consensus. Federal courts outside the Ninth Circuit have consistently interpreted *Carpenter* to hold that automated license plate reader data does not constitute a Fourth Amendment search.

15.

These cases include affirmative civil challenges to ALPR like the claims here. In *Scholl*, the court granted a motion to dismiss a Fourth Amendment challenge to a program of approximately 300 ALPR cameras in Cook County. 776 F. Supp. 3d at 706, 709. The court held that "the ALPR program lacks the same 'depth, breadth, and comprehensive reach'" that distinguished *Carpenter*. *Id*. at 719 (quoting *Carpenter*, 585 U.S. at 320). Rather, the court concluded, "the ALPR system is more akin to the beeper in *Knotts*, which 'amounted principally to the following of an automobile on public streets and highways.'" *Scholl*, 776 F. Supp. 3d at 720 (quoting *Knotts*, 460 U.S. at 281). The system "records a vehicle's location only when it passes one of a limited (though expanding) number of ALPRs, each of which is installed near the roadside of an expressway." *Scholl*, 776 F. Supp. 3d at 720. The court also compared the ALPR program to a permissible stationary pole camera that surveilled the outside of a suspect's house for eighteen months. *Id*. at 718 (citing *United States v. Tuggle*, 4 F.4th 505, 526 (7th Cir. 2021)).

Similarly, in *Schemel*, the court dismissed a Fourth Amendment claim challenging an ALPR system, holding that "[s]ince the ALPRs do not track the whole of Plaintiffs' physical movements—or anything analogous—the City's use of them does not trigger a search under the Fourth Amendment." 2025 WL 2958798, at *2. The *Schemel* plaintiffs advanced arguments materially identical to those pressed here, and the court rejected them at the pleading stage.

> d. *Discovery is not necessary to resolve the Fourth Amendment issue.*

Nor can Plaintiffs avoid this conclusion by arguing that discovery might reveal facts sufficient to bring ALPR technology within *Carpenter's* ambit. In *Schmidt*, which was resolved at summary judgment, the court held that "Defendants' ongoing operation of their 176 ALPR cameras . . . does not constitute a 'search.'" 819 F. Supp. 3d at 509. Even with a developed record, the result was the same. The *Schmidt* court explained: "[S]ince a collection of photos taken in public places that are never accessed or analyzed reveals nothing about a person's movements from one place to another, it definitionally does not reveal 'the whole' of that person's movements." *Id.* at 510. The court further distinguished *Carpenter*, observing that the "invasiveness of the tracking in *Carpenter* was grounded in the fact that it was near continuous,

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF

throughout the day and night, with the hundred-plus data points per day emanating from a device that was essentially attached to the user's hip." *Id.* at 511. By contrast, the ALPR system "is not like an ankle monitor attached to that citizen (or even to their car) as the data does not consistently reveal where trips started, where they ended, or where (or even in which specific 'quadrant') a driver stopped in between." *Id.* at 512. Plaintiffs were "unable to demonstrate that Defendants' ALPR system is capable of tracking the whole of a person's movements." *Id.*at 511. That conclusion does not depend on the volume of the factual record—it follows from the inherent limitations of ALPR technology. No amount of discovery will transform a fixed camera on a public road into the sort of pervasive, intimate surveillance that concerned the Court in *Carpenter*.

The criminal cases are in accord. In *United States v. Porter*, the Fifth Circuit recently affirmed the district court's denial of defendant's motions to suppress, holding that law enforcement's use of a license plate reader system did not constitute a Fourth Amendment search. 170 F.4th at 386. There, citing *Knotts*, the court emphasized that motorists traveling on public thoroughfares have no reasonable expectation of privacy in their movements. *Id*. at 386. Critically, the *Porter* court distinguished ALPR technology from the CSLI in *Carpenter*, reasoning that ALPR systems capture only "periodic information" about a vehicle's location "'on public streets and highways'"—a far cry from the comprehensive, continuous tracking of an individual's movements that CSLI enables. *Id*. (quoting *Knotts*, 460 U.S. at 281). The Fifth Circuit concluded that the ALPR system does not "faithfully follow[ ]" individuals "beyond public thoroughfares." *Porter*, 170 F.4th at 386.

Numerous other courts have agreed with this analysis. *See also Jackson*, 2025 WL 1530574, at *3, *7 ("Flock System at issue here lacks the wide and continuous tracking of a defendant which the Supreme Court has stated is constitutionally suspect"; "the tracking is not continuous[;] [t]he data is limited to only those locations where a Flock camera is stationed, and it is possible to evade detection by driving in areas without Flock camera coverage"); *Floyd*, 811 F. Supp. 3d at 1350 ("the license plate readers provided a snapshot of Defendant's location at a discrete time while traveling in an automobile on a public road[;] [i]n addition, the same

information obtained from the license plate readers could have been obtained from simple visual surveillance"); *Cooper*, 2025 WL 35035, at *6 ("a person must actively pass by one of the cameras for any data to be collected and even then, only a small amount of information is collected and retained;" individual snapshots "hardly rise to the level of persistent, unceasing public surveillance that the courts found troublesome in *Carpenter*" (quoting *Martin*, 753 F. Supp. 3d at 473)); *Martin*, 753 F. Supp. 3d at 470, 476 ("[t]here is simply no expectation of privacy in the exterior of one's vehicle" "or while driving it on public thoroughfares"; ALPR cameras "merely augment the same inherent sensory faculties of law enforcement that have existed since the Founding"); *Toombs*, 671 F. Supp. 3d at 1340–41 (ALPR data "at most . . . parallels the beeper data that did not implicate Fourth Amendment concerns in *Knotts*"; "[b]oth provide a snapshot of the suspect's location at a discrete time while traveling in an automobile on a public road[;] [n]either tracks the suspect's entire movements over a significant period of time[;] [a]nd both result in information that could have been obtained from simple visual surveillance"). The case law thus reflects a broad nationwide consensus that ALPR cameras do not implicate *Carpenter*.

The detailed technological examination of the Flock system in *Martin* is particularly instructive. In *Martin*, the court considered a configuration of Flock cameras nearly identical to the system at issue here: "a stationary camera, affixed to a pole without zoom, tilt, pan, audio, or video capabilities," with almost 200 such cameras deployed in the Richmond, Virginia area. 753 F. Supp. 3d at 458. Law enforcement used the system alongside other technological surveillance tools, including footage from private security cameras. *Id.* at 459; *see also Floyd*, 811 F. Supp. 3d at 1346–48 (rejecting a Fourth Amendment challenge where law enforcement used ALPR database queries alongside security-camera footage, fingerprint and DNA evidence, Google location data, and physical surveillance). After a thorough analysis, the court concluded that Flock cameras "are not typically placed in a linear, ordered fashion that tracks movements of the cars," "are not designed to capture pictures of humans," and do not allow "searches based on biometric or other human-based characteristics that would allow law enforcement to scan for individuals." *Martin*, 753 F. Supp. 3d at 458. Critically, the court found that even when police reviewed the Flock

18.

database, "police officers could not see the route [the defendant] allegedly took to and from the robberies because the Flock system does not record the totality of one's movements." *Id*. at 472. The court emphasized that the system captures snapshots of the defendant's "brief location at specific times" and "is not meant to 'track' or 'monitor' the entirety of an individual's movements during a particular car trip, much less through the activities of their daily life." *Id*. at 472–473. The court concluded that "[i]n no sense does the technology, at present, rise to the level of all-encompassing surveillance threatened" by CSLI. *Id*. at 473. The court explained "individuals drive past surveillance cameras, including tollbooth cameras, private security cameras, CCTV cameras, ALPRs, traffic light cameras, poll cameras, or Flock cameras" and that society has "come to expect the public surveillance of our vehicle as we travel on public roads." *Id*. at 475. Although *Martin* arose in the Eastern District of Virginia, its detailed technological findings regarding the same Flock camera system deployed in San José are directly persuasive, and its reasoning aligns with the conclusions reached by courts in this District in *Rubin* and *Butler*.

> e. *Retention of lawfully collected images does not implicate the Fourth Amendment.*

The scope of Plaintiffs' own requested relief reflects that the collection and initial storage of ALPR photographs does not violate the Fourth Amendment. Plaintiffs do not seek to enjoin Defendants' operation of the ALPR cameras. Instead, they seek to require deletion of ALPR images after 24 hours absent a warrant or warrant exception, or, alternatively, to prevent Defendants from accessing photos older than 24 hours without the same. Compl. ¶ 128(b). This request tacitly concedes that neither the taking nor the initial storage of ALPR photographs are taken to be constitutionally suspect. Otherwise, Plaintiffs would have sought to bar all future use of the ALPR cameras and request deletion of all photographs. Rather, Plaintiffs' relief suggests the ALPR photographs somehow become constitutionally suspect only after being stored for more than 24 hours. But information that is lawfully collected under the Fourth Amendment does not become constitutionally suspect merely because the government retains or stores it beyond some arbitrary threshold. "[I]f a snapshot is taken in conformance with the Fourth Amendment, the government's storage and use of it does not give rise to an independent Fourth Amendment claim."

19.

*Johnson v. Quander*, 440 F.3d 489, 499 (D.C. Cir. 2006) (citing *California v. Ciraolo*, 476 U.S. 207, 213–15 (1986); *Dow Chem. Co. v. United States*, 476 U.S. 227, 239 (1986)). Applying this principle in the license plate context, the Sixth Circuit has held that it would "fl[y] in the face of established Fourth Amendment doctrine" to conclude that "even if an individual has no expectation of privacy in a license plate number, a privacy interest is somehow created by the entry of this information into a law-enforcement computer database." *United States v. Ellison*, 462 F.3d 557, 562 (6th Cir. 2006). If "the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment." *Id*. at 563.

An ALPR image is the paradigmatic "snapshot": a photograph of only what a vehicle owner has "knowingly expose[d] to the public." *Katz*, 389 U.S. at 351. If the initial capture is not a search—because, as discussed above, no reasonable expectation of privacy attaches to the exterior of a car traveling on public roadway—then no subsequent act of storing or querying that image transforms it into one. A contrary theory would require this Court to hold that a photograph taken in full compliance with the Fourth Amendment somehow becomes an unconstitutional search once placed in a searchable database. Or, in Plaintiffs' version, the City's ALPR photographs become an unconstitutional search after being stored for longer than 24 hours. Because the initial collection of ALPR photographs does not violate the Fourth Amendment, the storage of those lawfully collected records for more than 24 hours does not independently implicate the Fourth Amendment.

The undisputed features of ALPR technology establish that no search occurred here. The dispositive characteristics of ALPR cameras in San José —their fixed positions, limited fields of view, 30-day retention window, and inability to track continuous movement—are not in factual dispute. No amount of discovery concerning the frequency, scale, or extent of ALPR use in San José would alter the constitutional analysis, because the inherent limitations of the technology preclude the "detailed, encyclopedic, and effortlessly compiled" surveillance that *Carpenter* found constitutionally problematic. Virtually every court to address this issue—in this District, in this

20.

Circuit, and across the nation—has held that ALPR technology does not constitute a search. That consensus reflects settled constitutional principles: there is no reasonable expectation of privacy in the exterior of one's car on public thoroughfares, and the mere taking of photographs and their temporary storage does not capture "the whole" of anyone's physical movements. This Court should grant the motion to dismiss.

### B. The claims against SJPD and Paul Joseph are duplicative and should be stricken.

The claims against the SJPD should be dismissed and the portions of the Complaint naming SJPD as a defendant should be stricken because SJPD is not a separate legal entity capable of being sued. *See Hofmann v. City & Cnty. of San Francisco*, 870 F. Supp. 2d 799, 803 (N.D. Cal. 2012) (dismissing claims against a police department where the city was also named as a defendant). Federal Rule of Civil Procedure 12(f) provides that a court may strike from any pleading "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). *See Kajberouni v. Bear Valley Cmty. Servs. Dist.*, 641 F. Supp. 3d 888, 896–897 (E.D. Cal. 2022) (striking a police department from a lawsuit brought against that department and a community services district). The Ninth Circuit has held that intragovernmental agencies are not "persons" within the meaning of 42 U.S.C. § 1983 unless the parties that created the agency "intended to create a separate legal entity," and district courts have concluded that municipal police departments are not subject to suit under § 1983. *Est. of Beitz v. Riverside Police Dep't*, No. 5:24-CV-02084-SSS-JPRX, 2025 WL 2994574, at *3 (C.D. Cal. Sept. 30, 2025) (quoting *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995)). District courts have applied this principle to dismiss police departments where the claims duplicate claims against the municipality. *See Goodfellow v. Ahren*, No. 13-04726 RS, 2014 WL 1248238, at *9 (N.D. Cal. Mar. 26, 2014) (holding "[c]laims against the Alameda County Sheriff's Department and the Oakland Police Department are duplicative of claims against Alameda County and the City of Oakland, respectively"); *see also Estate of Beitz*, 2025 WL 2994574, at *3 (dismissing the Riverside Police Department as a defendant "[b]ecause it appears that Plaintiffs' claims against the Riverside Police Department and the City of Riverside are duplicative"). Here,

Plaintiffs' claims against the City and the SJPD are duplicative, and no facts suggest the City intended SJPD as a separate legal entity. SJPD must be dismissed and the portions of the Complaint naming SJPD as a defendant must be stricken.

Plaintiffs' claims against Defendant Paul Joseph must also be dismissed as redundant and the portions of the Complaint naming Joseph as a defendant should be stricken. An official-capacity suit "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) and "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008), *overruled on other grounds as recognized by Blythe v. City of San Diego*, No. 24-CV-02211-GPC-DDL, 2025 WL 1570528, at *9 (S.D. Cal. June 2, 2025). Plaintiffs sued Joseph only "in his official capacity as SJPD's chief of police," Compl. ¶ 19, and because San José is already a defendant, Joseph is redundant and should be dismissed. The portions of the Complaint naming Joseph as a defendant should be stricken.

### C.   Plaintiffs' Class Definitions are Overly Broad and Should be Stricken.

Even if the Court does not dismiss the Complaint in its entirety, it should strike all class-related allegations under Federal Rule of Civil Procedure 12(f) because the proposed class—defined as "all San Jose residents who were drivers of vehicles that, after April 15, 2025, were photographed or, at any future date, will be photographed by the Flock Cameras" Compl. ¶ 114—is overbroad and unascertainable. Courts in this District have struck class allegations at the pleading stage when the complaint shows that the proposed class is facially unworkable. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (holding "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery").

First, the class definition is fatally overbroad and unascertainable. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) (explaining that courts have stricken class allegations at the pleading stage where "the class definitions were overbroad, and therefore, the

classes were not ascertainable"); *see also Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (striking unascertainable class). Here, the class includes all San José residents who "at any future date, will be photographed by the Flock Cameras." Compl. ¶ 114. A class with no temporal cutoff that includes individuals who have not yet been— and may never be—photographed cannot be feasibly identified.

Second, Plaintiffs challenge only the collection and storage of ALPR data as to themselves, and yet their purported common questions reach beyond collection into warrantless querying. For instance, Plaintiffs identify as questions common to the class "[w]hether Defendants have a policy or custom of allowing SJPD employees to access information collected by the Flock Cameras without a warrant, probable cause, or any form of individualized suspicion," and "[w]hether the Flock Cameras enable officers to glean insights from people's movements that are inconsistent with traditional expectations of privacy in public." Compl. ¶ 115(b). Further, Plaintiffs claim to challenge "policies or customs of operating the Flock Cameras, storing data for 30 days, and *permitting widespread access to those data without a warrant, probable cause, or individualized suspicion*." *Id*. ¶ 116 (emphasis added). But neither the named Plaintiffs nor likely much of the putative class have standing to challenge warrantless queries, because they do not allege—and cannot allege—that their data was ever actually queried, let alone queried without a warrant. A class definition resting on common questions to which neither the representatives nor most class members have standing is precisely the type of overbroad, internally inconsistent class that courts in this District strike. *See Sandoval*, 34 F. Supp. 3d at 1044; *see also Falcone v. Nestle USA, Inc.*, No. 24-7707, 2026 WL 74510, at *1 (9th Cir. Jan. 9, 2026) (holding that "at least one named plaintiff must satisfy the standing requirements" for injunctive relief in a class action).

The Court should not allow the case to proceed based on these class allegations, which are inherently unworkable.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice. In the alternative, if the Court does not dismiss the Complaint in its entirety, the class allegations should be stricken from the Complaint for the reasons set forth above.

Dated: June 26, 2026

By:*/s/ Jonathan I. Kravis*

SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
JULIA VAN ROO, Sr. Deputy City Attorney (274169)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone: (408) 535-1900
cao.main@sanjoseca.gov

JONATHAN I. KRAVIS (pro hac vice)
JESSIE K. LIU (pro hac vice)
CHARLOTTE U. KEELEY (pro hac vice)
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
jonathan.kravis@lskllp.com
jessie.liu@lskllp.com
charlotte.keeley@lskllp.com

*Counsel for Defendants*

DEFS.' MOT. TO DISMISS COMPL. & STRIKE
NO. 5:26-cv-03181-BLF