SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
JULIA VAN ROO, Sr. Deputy City Attorney (274169)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone: (408) 535-1900
cao.main@sanjoseca.gov

JONATHAN I. KRAVIS (pro hac vice)
JESSIE K. LIU (pro hac vice)
CHARLOTTE U. KEELEY (pro hac vice)
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
jonathan.kravis@lskllp.com
jessie.liu@lskllp.com
charlotte.keeley@lskllp.com

*Attorneys for Defendants*
CITY OF SAN JOSÉ;
SAN JOSÉ POLICE DEPARTMENT;
and PAUL JOSEPH

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSÉ DIVISION**

| | |
|---|---|
| ZHAOCHENG ANTHONY TAN; SCOTT WEST; and COLIN WOLFSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF SAN JOSE; SAN JOSE POLICE DEPARTMENT; and PAUL JOSEPH, in his official capacity as San Jose Chief of Police,<br><br>*Defendants*. | Case No. 5:26-cv-03181-BLF<br><br>**DEFENDANTS CITY OF SAN JOSÉ; SAN JOSÉ POLICE DEPARTMENT; and PAUL JOSEPH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Judge: Hon. Beth Labson Freeman<br>Courtroom: 1 – 5th Floor<br>Hearing Date: October 1, 2026<br>Hearing Time: 9:00 a.m. |

**Table of Contents**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs Have Not Plausibly Alleged That San José's ALPR Technology Effects a Warrantless Search in Violation of the Fourth Amendment. .......... 2

1. Plaintiffs Lack Standing to Challenge Retrospective Queries of ALPR Data. .......... 2

2. The *Carpenter*/*Chatrie* Framework Supports Dismissal—The "Multifactor Test" Plaintiffs Invoke Is Not the Law. .......... 4

3. Plaintiffs' Attempt to Dismiss the Weight of ALPR Case Law Fails. .......... 10

B. The Claims Against SJPD and Chief Joseph Should Be Dismissed. .......... 12

C. Defendants Have Met Their Burden to Justify Striking the Class Allegations. .......... 13

III. CONCLUSION .......... 14

## Table of Authorities

**Cases**

*ACLU v. Clapper*,
785 F.3d 787 (2d Cir. 2015) .......... 2

*California ex rel. RoNo, LLC v. Altus Fin. S.A.*,
344 F.3d 920 (9th Cir. 2003) .......... 9

*Carpenter v. United States*,
585 U.S. 296 (2018) .......... passim

*Chatrie v. United States*,
146 S. Ct. 2193 (2026) .......... passim

*Chinitz v. Intero Real Estate Servs.*,
2020 WL 7391299 (N.D. Cal. July 22, 2020) .......... 11

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*,
533 F.3d 780 (9th Cir. 2008) .......... 10

*Falcon v. Nestle USA, Inc.*,
2026 WL 74510 (9th Cir. Jan. 9, 2026) .......... 11

*Hofmann v. City & Cnty. of San Francisco*,
870 F. Supp. 2d 799 (N.D. Cal. 2012) .......... 10

*Illinois v. Gates,*
462 U.S. 213 (1983) .......... 6

*Kajberouni v. Bear Valley Cmty Servs. Dist.*,
641 F. Supp. 3d 888 (E.D. Cal. 2022) .......... 10

*Kentucky v. Graham*,
473 U.S. 159 (1985) .......... 10
*Kyllo v. United States*,
533 U.S. 27 (2001) .......... 1, 7
*Leaders of a Beautiful Struggle v. Baltimore Police Department*,
2 F.4th 330 (4th Cir. 2021) (en banc) .......... 8
*New York v. Class*,
475 U.S. 106 (1986) .......... 7
*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 11
*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 11
*Schemel v. City of Marco Island Fla.*,
2025 WL 2958798 (M.D. Fla. Oct. 17, 2025) .......... 1, 9
*Schmidt v. City of Norfolk*,
819 F. Supp. 3d 492 (E.D. Va. 2026) .......... passim
*Scholl v. Illinois State Police*,
776 F. Supp. 3d 701 (N.D. Ill. 2025) .......... passim
*Schuchardt v. President of the United States*,
839 F.3d 336 (3d Cir. 2016) .......... 2
*Shaw v. California Dep't of Alcoholic Beverage Control*,
788 F.2d 600 (9th Cir. 1986) .......... 10

*United States v. Butler*,
2024 WL 3447505 (N.D. Cal. July 16, 2024)........................................................................ 1, 10
*United States v. Chatrie*,
136 F.4th 100 (4th Cir. 2025) (en banc) .......................................................................... 1, 3
*United States v. Knotts*,
460 U.S. 276 (1983)................................................................................................................ 4
*United States v. Martin*,
753 F. Supp. 3d 454 (E.D. Va. 2024) ........................................................................... passim
*United States v. Porter*,
170 F.4th 381 (5th Cir. 2026) ......................................................................................... 1, 10
*United States v. Rubin*,
556 F. Supp. 3d 1123 (N.D. Cal. 2021) ...................................................................... 1, 5, 10
*Wikimedia Found. v. Nat'l Sec. Agency*,
857 F.3d 193 (4th Cir. 2017) .................................................................................................. 2

**Rules**

Rule 12(b)(6)......................................................................................................................... 12
Rule 23(b)(2)......................................................................................................................... 10

# I. INTRODUCTION

Plaintiffs' Opposition confirms the basis for dismissal. Plaintiffs do not dispute that they have no reasonable expectation of privacy in the information recorded by San José's ALPR technology—the locations of their vehicles on public roads. Plaintiffs also do not dispute that they have not alleged any injury to them arising out of an aggregation of data from multiple ALPR cameras, for example through a retrospective query of ALPR data for their vehicles. To the extent Plaintiffs are now framing their challenge in terms of such aggregation, they lack standing to bring it. And even if they did have standing to bring such a challenge, dismissal is still warranted because, as the federal courts have uniformly held, ALPRs do not track the whole of a person's movements, nor do they follow anyone beyond public thoroughfares or into private spaces. That distinction is dispositive under *Carpenter v. United States*, 585 U.S. 296 (2018), and the Supreme Court's recent decision in *Chatrie v. United States*, 146 S. Ct. 2193 (2026).

*Chatrie* explains why. There, the Court held that police conducted a search by obtaining Google Location History data that logged a user's position "every two minutes or so" and tracked users into private spaces. *Id.* at 2200, 2211. What mattered was not the volume of data collected in the particular search at issue in the case but rather the nature and capabilities of the technology. The Fourth Amendment, the Court explained, does not depend on "'the quality or quantity of information'" the government obtains—either the Fourth Amendment applies to a particular challenged practice or it does not. *Id.* at 2210 (quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001)). Location History was a search because it "'faithfully follow[ed] its user beyond public thoroughfares and into private'" spaces. *Id.* at 2211 (quoting *Carpenter*, 585 U.S. at 311). A fixed ALPR camera on a public road shares none of those characteristics. Rather, it merely photographs the exterior of vehicles on public thoroughfares.

Plaintiffs characterize San José's ALPR technology as a "dragnet surveillance system that aggregates their movements and everyone else's into a database that police can mine for insights." Opp. at 2. But the Complaint's own allegations describe something fundamentally different: fixed cameras on public roads that photograph the exteriors of passing vehicles and store those images

for thirty days. Compl. ¶¶ 2, 22, 30, 55. That is not a dragnet—it is public observation, automated. And *Chatrie* drew a hard line distinguishing "public-movements-only technology," 146 S. Ct. at 2211 n.10, like cameras "confined to public roads," from cell-phone tracking that follows users into private spaces. *Id*. at 2211. Plaintiffs attempt to obscure this distinction by invoking a "multifactor test," Opp. at 8, drawn from Judge Wynn's Fourth Circuit concurrence in *United States v. Chatrie*, 136 F.4th 100, 119 (4th Cir. 2025) (en banc)—but the Supreme Court vacated and remanded that decision and did not adopt that framework (nor has any other court).

The weight of authority confirms this conclusion. Every federal court to consider ALPR technology—including courts in this District—has held that it does not constitute a Fourth Amendment search. *See United States v. Rubin*, 556 F. Supp. 3d 1123, 1130 (N.D. Cal. 2021); *United States v. Butler*, 2024 WL 3447505 (N.D. Cal. July 16, 2024). That consensus spans every procedural posture: motions to dismiss (*Scholl v. Illinois State Police*, 776 F. Supp. 3d 701 (N.D. Ill. 2025); *Schemel v. City of Marco Island Fla.*, 2025 WL 2958798 (M.D. Fla. Oct. 17, 2025)), summary judgment (*Schmidt v. City of Norfolk*, 819 F. Supp. 3d 492 (E.D. Va. 2026)), and suppression hearings (*United States v. Martin*, 753 F. Supp. 3d 454 (E.D. Va. 2024)). The only circuit court to address the issue—the Fifth Circuit in *United States v. Porter*, 170 F.4th 381 (5th Cir. 2026)—unanimously agreed. Plaintiffs' Opposition offers no persuasive reason for this Court to become the first federal court to hold otherwise.

## II. ARGUMENT

### A. Plaintiffs Have Not Plausibly Alleged That San José's ALPR Technology Effects a Warrantless Search in Violation of the Fourth Amendment.

#### 1. Plaintiffs Lack Standing to Challenge Retrospective Queries of ALPR Data.

It is well settled that the information recorded by ALPRs—a vehicle's location on a public road—is not subject to a reasonable expectation of privacy. Therefore, Plaintiffs' allegations that their vehicles have been photographed by ALPRs do not state a claim under the Fourth Amendment.

Plaintiffs' Opposition does not argue otherwise. Instead, Plaintiffs contend that San José's ALPR technology effects a warrantless search at the point of collection and storage because the database's retrospective capability enables officers to reconstruct movements. Opp. at 7, 10–12. But that theory necessarily depends on law enforcement querying and analyzing the ALPR data stored by the database—without a query, stored ALPR images reveal nothing about anyone's retrospective location. *See Schmidt, 819 F. Supp. 3d at 510* (holding that "since a collection of photos taken in public places that are never accessed or analyzed reveals nothing about a person's movements from one place to another, it definitionally does not reveal 'the whole' of that person's movements.") And Plaintiffs do not allege that retrospective data for their vehicles has been subject to any such query or analysis. As the court held in *Scholl*, plaintiffs lack standing to challenge the retrospective capabilities of ALPR technology absent allegations of facts "indicating a 'substantial risk' that police will soon retrieve plaintiffs' license plate information from the database." 776 F. Supp. 3d at 710 (internal citations omitted). *Schmidt* reached the same conclusion, holding that plaintiffs had "standing to challenge the collection and storage of the images, and lack[ed] standing to challenge any query of the ALPR image database," 819 F. Supp. 3d at 509, because they "concede[d] that their vehicles have never been the subject of a query." *Id.* at 504. The same is true here—Plaintiffs have not alleged that law enforcement has queried and analyzed retrospective ALPR data for their vehicles, and therefore they lack standing to challenge those retrospective capabilities.

Plaintiffs contend that "every U.S. Court of Appeals to address the issue" has held that "a plaintiff need only show the government has collected and stored their information, not that a human will actually review it." Opp. at 22. That argument misses the point. Defendants do not dispute that Plaintiffs have standing to challenge *collection*; rather, Defendants' Motion to Dismiss argues that collection is not a search under the Fourth Amendment. But Plaintiffs' claim as framed in their Opposition is based not on the collection of the ALPR data, but rather on the inferences that (according to Plaintiffs) can be drawn from a retrospective review of that data. Because

Plaintiffs do not allege that their vehicle data has been subject to any such retrospective review, they lack standing to bring this claim.

The very cases Plaintiffs cite illustrate the distinction between collection and a query. *Scholl*—the most thorough federal court treatment of Article III standing in an ALPR case—cited three of the four appellate decisions Plaintiffs, at Opp. 22, invoke (*Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193 (4th Cir. 2017), *Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016), and *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015)) to find standing to challenge ALPR collection but no standing to challenge a retrospective query of the ALPR data. *Scholl*, 776 F. Supp. 3d at 709, 714. *Scholl* then held that collection was not a search. *Id*. *Schmidt* followed the same two-step approach, explaining that "a collection of photos taken in public places that are never accessed or analyzed reveals nothing about a person's movements from one place to another" and thus "definitionally does not reveal 'the whole' of that person's movements." 819 F. Supp. 3d at 510. Plaintiffs' assertion that "the warrantless collection of data is a Fourth Amendment (and thus Article III) injury regardless of whether a human 'queries' the information," Opp. at 22, conflates standing with the merits—precisely the error *Scholl* cautioned against. *See* 776 F. Supp. 3d at 710.

### 2. The *Carpenter*/*Chatrie* Framework Supports Dismissal—The "Multifactor Test" Plaintiffs Invoke Is Not the Law.

In any event, Plaintiffs' Opposition relies entirely on an attempt to analogize ALPR data to the technologies at issue in *Carpenter* and *Chatrie*. That attempt fails. Both decisions reaffirmed the foundational rule that technology confined to observing vehicles on public roads does not implicate the Fourth Amendment. *Carpenter*, 585 U.S. at 306; *Chatrie*, 146 S. Ct. at 2211. Contrary to Plaintiffs' assertions, Opp. at 7, *Carpenter* does not set out a multifactor test for evaluating the collection of public location information. *See Martin*, 753 F. Supp. 3d at 471 (rejecting argument that *Carpenter* "adopted a new 'balancing test'" with multiple "factors"). Nor has the Supreme Court embraced multifactor frameworks in the Fourth Amendment context, preferring instead case-specific analysis of "the totality-of-the-circumstances." *See Illinois v.*

*Gates*, 462 U.S. 213, 238 (1983). *Carpenter* follows that approach: it considers the particular circumstances relevant to whether CSLI invaded the defendant's reasonable expectation of privacy in the whole of his movements, without prescribing a test for fundamentally different technologies. 585 U.S. at 298, 316. Plaintiffs further mischaracterize *Carpenter*'s framework when they assert that the Court did not measure the surveillance against "some imagined 'whole' of people's movements threshold." Opp. at 10. In fact, *Carpenter* did exactly that—the Court held that accessing CSLI without a warrant "invaded Carpenter's reasonable expectation of privacy *in the whole of his physical movements*." 585 U.S. at 313 (emphasis added). *Chatrie* reaffirmed that holding, recounting that *Carpenter* concluded the government "'invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements'" when it accessed CSLI. 146 S. Ct. at 2206 (quoting *Carpenter*, 585 U.S. at 312–13).

Plaintiffs' contention that *Carpenter* "laid the groundwork for a new, multifactor test," Opp. at 8, is based entirely on Judge Wynn's concurrence in the Fourth Circuit's en banc decision in *Chatrie*, 136 F.4th at 119—which the Supreme Court vacated, 146 S. Ct. 2193, and which no court has ever adopted. Plaintiffs' assertion that "[t]he Supreme Court largely vindicated Judge Wynn's panel dissent and en banc concurrence," Opp. at 8 n.2, is their characterization, not the Court's holding.

The legal analysis endorsed by the Supreme Court in *Carpenter* and reaffirmed in *Chatrie* is not Plaintiffs' multifactor test. Rather, those cases began from a foundational premise: a person traveling on public thoroughfares has no reasonable expectation of privacy in those movements. *See Chatrie*, 146 S. Ct. at 2211 (quoting *United States v. Knotts*, 460 U.S. 276, 281 (1983)). From that premise, the Court examined the *nature* and *capability* of the technology at issue to determine whether it was so "comprehensive" in tracking an individual's movements into private spaces as to require a warrant. *Carpenter*, 585 U.S. at 309. Thus, *Carpenter* described CSLI as capable of "near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 312. This characterization was based on the Court's observation that a cell phone is "almost a feature of human anatomy" that "faithfully follows its owner beyond public thoroughfares and into private

residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id*. at 311.

Likewise, *Chatrie* drew a hard line between "public-movements-only technology," 146 S. Ct. at 2211 n.10, such as "surveillance" "confined to public roads," and cell-phone-tracking technology. *Id*. at 2211. As the Court explained, "'[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy'" because "the car is always 'in plain view.'" *Id*. (quoting *Knotts*, 460 U.S. at 281). By contrast, "the movements that Location History" or CSLI "reveals are not limited to public streets," because a "cell phone faithfully follows its owner" into "private residences, doctor's offices, political headquarters." *Chatrie*, 146 S. Ct. at 2211 (internal quotations omitted). Indeed, the Court observed, Location History even shows the "specific floor" where a person is located inside a building. *Id*. *Chatrie* described this technology as providing "a virtual panopticon" of an individual's "activities." *Id*. at 2210. *Chatrie* thus reaffirms *Carpenter*'s holding that accessing location information violates a reasonable expectation of privacy only where that information provides "near perfect surveillance," *id.* at 2208 (internal quotations omitted), yielding a "comprehensive chronicle" of "past movements." *Id*. at 2206 (internal quotations omitted).

Plaintiffs' invented multifactor test ignores these critical aspects of *Carpenter* and *Chatrie*. Every federal court—including courts in this District—to apply the reasoning of those cases to ALPRs has concluded that ALPR data is not remotely similar to CSLI or Location History. ALPRs are stationary cameras that photograph only a car's exterior at a fixed public point. They do not cross the line drawn by *Carpenter* and *Chatrie*—they do not follow anyone into a home, office, or any other private space. And ALPR data is "not remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*." *Rubin*, 556 F. Supp. 3d at 1130 (quoting *Carpenter*, 585 U.S. at 309). ALPRs capture scattered snapshots at fixed public points—not 101 data points per day tracking a person into private residences, doctor's offices, and political headquarters. *See Carpenter*, 585 U.S. at 302, 311.

Plaintiffs argue that *Carpenter* and *Chatrie* rejected a "quantitative threshold" for Fourth Amendment protection, but that argument does not support their position. Opp. at 8, 11. To be sure, those decisions hold that the constitutional inquiry does not turn on the amount of data actually collected in a particular search. But that principle is distinct from the threshold question of whether the technology at issue is capable of tracking the whole of an individual's movements—achieving the kind of near-perfect, continuous surveillance akin to an ankle monitor. As the federal courts have uniformly held, ALPRs have no such capability. They do not track an individual's movements, and they do not encroach on private spaces.

Plaintiffs' reliance on *Chatrie*'s statement that "even two hours," *Chatrie,* 146 S. Ct. at 2210, of data can be revealing, Opp. at 10–11, only *underscores* the dispositive distinction. In rejecting the Government's argument that two hours was too short to constitute a search, the Court explained: "What creates that concern is that the government can access all of a cell-phone user's movements, in both public and private places," giving the government "a virtual panopticon with which to scrutinize its citizens' activities." *Chatrie*, 146 S. Ct. at 2210. The sweep of the intrusion was not diminished because the government chose only two hours, because the government had at its fingertips a vast reservoir of comprehensive, precise location data stretching back boundlessly. *Id.* at 2207, 2210–11. ALPR data is not remotely comparable. An individual's car will at most have been photographed at a limited number of fixed points on public roads. ALPR data does not follow anyone inside any private place. And ALPR data in San José is deleted after 30 days. Compl. ¶¶ 43, 57. Far from creating a "boundless" "panopticon," San José's ALPR technology captures only scattered snapshots of vehicles on public thoroughfares—the type of "public-movements-only technology" that *Chatrie* contrasted with the cell-phone tracking that triggered Fourth Amendment protection.

The detailed technological examination of the ALPR technology in *Martin* is particularly instructive. The *Martin* court considered a configuration of Flock cameras nearly identical to the one here: "a stationary camera affixed to a pole without zoom, tilt, pan, audio, or video capabilities," with almost 200 such cameras deployed in the Richmond, Virginia area. 753 F. Supp.

3d at 458. After a thorough analysis, the court concluded that Flock cameras "are not typically placed in a linear, ordered fashion that tracks the movements of the cars," "are not designed to capture pictures of humans," and do not allow "searches based on biometric or other human-based characteristics." *Id.* Critically, the court found that even when law enforcement reviewed the Flock database, "police officers could not see the route [the defendant] allegedly took to and from the robberies because the Flock system does not record the totality of one's movements." *Id.* at 472. The court emphasized that the technology captures "brief location at specific times" and "is not meant to 'track' or 'monitor' the entirety of an individual's movements during a particular car trip, much less through the activities of their daily life." *Id.* at 472–73. In *Scholl*, the court reached the same conclusion about an ALPR program on expressways across Cook County, holding that "[k]nowing what portions of an expressway someone passes tells the government far less about the privacies of life, than data that tracks … the movements of a cellphone's owner." 776 F. Supp. 3d at 720 (internal quotations and citations omitted).

These holdings apply with full force here. As *Martin* explained, ALPR cameras "merely augment the same inherent sensory faculties of law enforcement that have existed since the Founding." 753 F. Supp. 3d at 476. They are, in other words, precisely the type of "conventional surveillance techniques and tools" that *Carpenter* expressly declined to "call into question." 585 U.S. at 316.

Plaintiffs next contend that San José's ALPR technology has "the *ultimate potential* to reveal patterns or visits to sensitive locations." Opp. at 12. But "visits to sensitive locations," *id.*, is not the test. As the *Schmidt* court observed, "a lawful pole camera installed by police near a church or school can identify all the people who likely attend that church or school (regardless of their criminality) yet the ability to discover this one intimate datapoint does not render that camera unconstitutional." 819 F. Supp. 3d at 514 n.18 (internal quotations omitted). The test is whether the technology contravenes a reasonable expectation of privacy by providing "near perfect surveillance," *Carpenter*, 585 U.S. at 312, including following individuals *beyond public thoroughfares into private spaces*. *See id.* at 311 (CSLI "faithfully follows" its owner "beyond

public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales"); *Chatrie*, 146 S. Ct. at 2211 ("the movements that Location History reveals are not limited to public streets"). Plaintiffs do not allege that ALPRs do anything like this.

Next, Plaintiffs argue that because SJPD placed cameras in residential areas, the ALPR technology can "discern when people are in their homes." Opp. at 14 (citing Compl. ¶¶ 78, 89, 97). But a camera on a public road that photographs a car parked nearby does not reveal anything about the *interior* of a home. It shows only that a vehicle was present on a public street in the vicinity of a residence—which is visible to any neighbor or passerby from a public road. Indeed, a parked car does not even reliably indicate whether someone is home; the vehicle's owner may have walked to a destination, taken a rideshare, been picked up by a friend, or left the city entirely. The constitutional concern in *Kyllo* was technology that penetrated the home's walls to reveal interior details otherwise "unknowable without physical intrusion." 533 U.S. at 40. A photograph of a car on a public street near a house is the opposite: it captures only what is already in plain view. *See New York v. Class*, 475 U.S. 106, 114 (1986). Inferring that a person is at home because their car is parked on a public street nearby is precisely the kind of speculative deduction that does not convert public observation into a Fourth Amendment search.

Plaintiffs' 50,000-route simulation, Compl. ¶ 52, is irrelevant to this analysis. Even if every route in San José were captured, the cameras would still photograph only vehicles on public roads and never follow anyone into a private space. And it would not provide the "detailed, encyclopedic, and effortlessly compiled" record of a person's whereabouts that *Carpenter* found constitutionally problematic. 585 U.S. at 309.

Plaintiffs also suggest that ALPR data, when combined with "other information," can "deduce a detailed log of [someone's] movements" just as CSLI could in *Carpenter*. Opp. at 16. Courts have squarely rejected this theory. *Schmidt* held that "[n]either *Carpenter* nor *Beautiful Struggle* supports Plaintiff's argument that the collection and analysis of 2 or 3 (or even several more) scattered ALPR data points, sometimes miles and hours apart, constitutes a 'search' simply because this data contributes one or more pieces to a larger investigative jigsaw puzzle." 819 F.

Supp. 3d at 516–17. The critical question is whether the challenged technology itself "is what enables deductions from the whole of individuals' movements"—and ALPR data "does not capture 'the whole' of individuals' movements or even an analogue of 'the whole.'" *Id.* (quoting *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330, 345 (4th Cir. 2021) (en banc). *Scholl* likewise rejected the "mosaic theory" under which "a set of nonsearches aggregated together amount to a search because their collection and subsequent analysis creates a revealing mosaic." 776 F. Supp. 3d at 715–16 (internal citations and quotations omitted).

*Leaders of a Beautiful Struggle* is equally inapposite. That case involved an aerial surveillance program that "tracked every movement of every person outside in Baltimore," creating "a detailed, encyclopedic record." 2 F.4th at 341(internal quotations omitted). That system recorded continuous movement data for *every person* in the surveilled area. Fixed cameras that capture only scattered public points cannot do that. Federal courts have consistently rejected attempts to analogize ALPRs to the aerial program. *See Martin*, 753 F. Supp. 3d at 473 (ALPRs "capture images of locations, not individuals" and "in no sense" rise to the "all-encompassing surveillance" of CSLI or the aerial program).

**3. Plaintiffs' Attempt to Dismiss the Weight of ALPR Case Law Fails.**

In the face of the federal courts' uniform rejection of their position, Plaintiffs argue that the ALPR cases Defendants cite involved "much more limited systems" and were mostly decided at summary judgment or suppression hearings, not on motions to dismiss. Opp. at 15. This is wrong on several counts.

First, multiple ALPR challenges have been resolved at the motion-to-dismiss stage. *Scholl* granted dismissal of a Fourth Amendment challenge to approximately 300 ALPR cameras, holding that "the ALPR program lacks the same 'depth, breadth, and comprehensive reach'" as the surveillance in *Carpenter*. 776 F. Supp. 3d at 719 (quoting *Carpenter* 585 U.S. at 320). *Schemel* likewise dismissed a Fourth Amendment ALPR challenge at the pleading stage, holding that "[s]ince the ALPRs do not track the whole of Plaintiffs' physical movements—or anything

analogous—the City's use of them does not trigger a search under the Fourth Amendment." 2025 WL 2958798, at *2.

Second, even the cases resolved at summary judgment or on suppression motions—like *Schmidt*, 819 F. Supp. 3d 492, and *Martin*, 753 F. Supp. 3d 454—only *reinforce* the case for dismissal. If anything, these cases demonstrate that additional factual development does not change the outcome. Even after full discovery, courts concluded that ALPRs do not constitute a search. That is because the conclusion follows from the inherent technological limitations of ALPR cameras—limitations that no amount of discovery can alter.

Third, the scale of the San José ALPR technology does not distinguish it from these cases because the constitutional question turns on the *character* of the technology, not the number of cameras. *Chatrie* makes this clear: the Court distinguished "public-movements-only technology" from cell-phone tracking technology, drawing the line based on the nature of what is surveilled, not its scale. 146 S. Ct. at 2211 n.10. Irrespective of the number of cameras in a particular city, a fixed ALPR camera on a public road still photographs only publicly exposed vehicle exteriors at fixed public points. It never follows anyone home or into other constitutionally protected spaces.

Fourth, Plaintiffs invoke *California ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 (9th Cir. 2003), to argue that Defendants cannot rely on "facts" from other cases. Opp. at 15. But Defendants are not importing extrinsic facts—they are citing legal holdings about the inherent characteristics of ALPR technology. Those characteristics (fixed position, limited field of view, inability to track beyond public thoroughfares) are, in fact, pled in Plaintiffs' own Complaint. *See* Compl. Figure 2, Figure 3.

Finally, Plaintiffs never explain how adding more cameras changes the nature of what each camera captures. A single ALPR camera on a public road photographs a vehicle's exterior in public

view; 474 cameras do the same thing at a maximum of 474 locations.[1] At no point does the technology begin to track anyone into a home, an office, or any private space. Plaintiffs have not alleged—and cannot allege—that San José's ALPR technology has evolved in any way that makes it comparable to CSLI or Location History. It remains what it has always been: a set of fixed cameras on public roads.

The law in this District is settled. In *Rubin*, Judge Breyer found "no reason to believe that the [ALPR] database provided a detailed log of [defendant's] movements," expressly distinguishing *Carpenter*. 556 F. Supp. 3d at 1129. This District reaffirmed *Rubin* in *Butler*, 2024 WL 3447505, and the Fifth Circuit—the only circuit court to address ALPR technology post-*Carpenter*—unanimously agreed in *Porter*, holding that ALPRs capture only "periodic information" on "public streets and highways" and do not "faithfully follow" individuals beyond public thoroughfares. 170 F.4th at 386 (internal quotations omitted).

**B. The Claims Against SJPD and Chief Joseph Should Be Dismissed.**

The claims against SJPD and Chief Joseph should be dismissed, as those claims are *duplicative* of the claims against the City. Plaintiffs allege no distinction between them, and district courts, including in this district, routinely dismiss police departments as redundant where the city is also named. *See Hofmann v. City & Cnty. of San Francisco*, 870 F. Supp. 2d 799, 803 (N.D. Cal. 2012); *Kajberouni v. Bear Valley Cmty Servs. Dist.*, 641 F. Supp. 3d 888, 896–97 (E.D. Cal. 2022). Chief Joseph is likewise a redundant official-capacity defendant because an official-capacity suit is treated as a suit against the entity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).

---

[1] According to Plaintiffs, in many locations, these cameras are positioned on both sides of a road or at all four corners of an intersection. Compl. ¶ 50. Necessarily, then, the City's ALPR cameras cover fewer than 474 discrete locations across San José's approximately 180 square miles.

The case cited by Plaintiffs, Opp. at 23, *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986), is not to the contrary. *Shaw* says only that SJPD is an entity that may be sued under California law. That case does not address the ground for dismissal offered here—that the claims against SJPD and Chief Joseph are duplicative of the claim against the City.

**C. Defendants Have Met Their Burden to Justify Striking the Class Allegations.**

Plaintiffs argue that Rule 23(b)(2) classes may include future members and do not require ascertainability. Opp. at 23–24. Even under that standard, their class definition is fatally overbroad because it includes "all San Jose residents who were drivers of vehicles that, after April 15, 2025, were photographed or, at any future date, will be photographed by the Flock Cameras," including individuals whose vehicles *may never be photographed*. Compl. ¶ 114; *see Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009). Plaintiffs' reliance on *Chinitz v. Intero Real Estate Servs.*, 2020 WL 7391299 (N.D. Cal. July 22, 2020), Opp. at 24, is misplaced: there, every past and future class member suffered the same concrete statutory injury from receiving a prohibited telemarketing call. *Chinitz,* 2020 WL 7391299, at *15. Here, the proposed class includes people whose vehicles were never photographed at all, as well as those whose vehicles were merely photographed on a public road but whose data was never queried, accessed, or analyzed, and thus lacks the same cohesive, completed injury.

Plaintiffs' proposed class definition thus sweeps in individuals who have no plausible Fourth Amendment claim, either because their vehicles were never photographed or because their vehicle's data was never queried, as the mere passive existence of data that is never accessed does not constitute a search. *See Scholl*, 776 F. Supp. 3d at 710–11 (dismissing challenge where plaintiffs failed to allege any "substantial risk" that police would retrieve their license-plate information); *Schmidt*, 819 F. Supp. 3d at 509 (plaintiffs lacked "standing to challenge any query of the ALPR image database" because they conceded their vehicles had never been the subject of a query); *Falcon v. Nestle USA, Inc.*, 2026 WL 74510, at *1 (9th Cir. Jan. 9, 2026) ("at least one

named plaintiff must satisfy the standing requirements" for injunctive relief in a class action). Plaintiffs' purported common questions conflate collection/storage with querying/access, yet the named Plaintiffs do not allege that their data was ever queried or accessed, making the proposed class overbroad and internally inconsistent.

Even under the "disfavored" standard for motions to strike, the class allegations here are facially unworkable and should be stricken. *See Sanders*, 672 F. Supp. 2d at 990 ("[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery").

## III. CONCLUSION

Even accepting every allegation in the Complaint as true, Plaintiffs have not stated a claim upon which relief can be granted. The dispositive characteristics of San José's ALPR technology—fixed cameras on public roads that photograph only vehicle exteriors and store those images for thirty days—are not in factual dispute, because Plaintiffs themselves allege them. Compl. ¶¶ 2, 22, 30, 55. No amount of discovery concerning the frequency, scale, or extent of ALPR use in San José would alter the constitutional analysis, because the inherent limitations of the technology preclude the "detailed, encyclopedic, and effortlessly compiled" surveillance that *Carpenter* found constitutionally problematic. 585 U.S. at 309. The Complaint is therefore subject to dismissal under Rule 12(b)(6). For the foregoing reasons and those set forth in Defendants' Motion to Dismiss (ECF No. 28), the Complaint should be dismissed with prejudice. Defendants SJPD and Chief Joseph should be dismissed. In the alternative, the class allegations should be stricken.

Dated: August 17, 2026

Respectfully submitted,

By: *Jonathan I. Kravis*

SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
JULIA VAN ROO, Sr. Deputy City Attorney (274169)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone: (408) 535-1900
cao.main@sanjoseca.gov

JONATHAN I. KRAVIS (pro hac vice)
JESSIE K. LIU (pro hac vice)
CHARLOTTE U. KEELEY (pro hac vice)
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
jonathan.kravis@lskllp.com
jessie.liu@lskllp.com
charlotte.keeley@lskllp.com

*Counsel for Defendants*